R.STAN MORRIS, Esq.
JONATHAN W. CARTEE, Esq.
CARTEE & MORRIS, LLC
2325 Henry Street
Guntersville, Alabama 35976
TEL: (256) 582-9500
FAX: (256) 582-0200
E-Mail stan@carteemorris.com


JULIA YOO, Esq.
LAW OFFICES OF EUGENE IREDALE
105 West F. Street, 4th Fl.
San Diego, CA 92101

Attorneys for Plaintiffs Sabrina Smith and Verna Clark

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA SMITH, as Administrator Ad Litem of the Estate of Tommy Christopher Tucker, Deceased and VERNA CLARK in her capacity as Successor in Interest to Tommy Christopher Tucker, <br><br>                    Plaintiffs, <br><br>        v. <br><br> COUNTY OF SAN DIEGO, a municipal corporation; Sheriff WILLIAM D. GORE; Deputy Sheriff JOHN FERRIS; Deputy Sheriff AARON HOXIE; Deputy Sheriff MICHAEL JOHNSON; Deputy Sheriff NIKHOLAS JOHNSON; Deputy Sheriff BENJAMIN NAZERIAN; Deputy Sheriff EDWARD WILT, and DOES 1-20 inclusive, <br><br>                    Defendants. | CASE NO.:   11cv0356-JLS(WVG) <br><br> **AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. Sec. 1983)** <br><br> **(1)  VIOLATION OF THE RIGHT OF ASSOCIATION - 42 U.S.C. 1983** <br><br> **(2)  DEPRIVATION OF LIFE WITHOUT DUE PROCESS 42 U.S.C. 1983** <br><br> **(3)  WRONGFUL DEATH - 42 U.S.C. 1983** <br><br> **(4)  DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS -42 U.S.C. 1983** <br><br> **JURY TRIAL IS HEREBY DEMANDED** |

COMES NOW, SABRINA SMITH, individually and as Administrator Ad Litem of the Estate of Tommy Christopher Tucker, Deceased and VERNA CLARK, individually, and as the natural mother of Tommy Christopher Tucker and in their capacity as Successors in Interest to Tommy Christopher Tucker and AMEND the Complaint previously filed pursuant to Fed.R.Civ.P. Rule 15(a)(1) and Rules 17 and 20 as follows:

I.

INTRODUCTION

1.  This action arises from the denial of adequate medical care, the use of unreasonable and excessive physical restraint and subsequent choking death of Tommy Christopher Tucker, ("Decedent") by San Diego County Deputy Sheriff JOHN FERRIS, Deputy Sheriff AARON HOXIE, Deputy Sheriff MICHAEL JOHNSON, Deputy Sheriff NIKHOLAS JOHNSON, Deputy Sheriff BENJAMIN NAZERIAN, Deputy Sheriff EDWARD WILT and JOHN DOES 1 - 20 on February 22, 2009 in the San Diego County Central Jail.

2.  Plaintiff Sabrina Smith is the sister and next friend of Decedent and a resident of the State of Alabama. Plaintiff Verna Clark is a resident of the state of Alabama and is the natural and biological mother of Decedent and of the Plaintiff Sabrina Smith. Decedent departed this life in the state of California intestate, with no spouse or offspring, and with his natural father having preceded him in death. The Decedent lived a significant portion of his life in Alabama and departed this life leaving assets in Marshall County, Alabama, thus giving the Probate Court of Marshall County, Alabama jurisdiction over Decedent's estate pursuant to Code of Alabama Section 43-2-40(3). No one has been appointed to serve as administrator of the estate of Tommy Christopher Tucker, however the Probate Court of the State of Alabama duly

1    appointed Sabrina Smith to be the Administrator Ad Litem of Decedent's

2    estate pursuant to Code of Alabama (1975)section 43-2-250.  Sabrina Smith

3    and Verna Clark sue for violation of civil rights pursuant to 42 U.S.C.

4    Section 1983 and the First, Fourth, Fifth, Eighth and Fourteenth Amendments

5    to the United States Constitution.

6                                      II.

7                          JURISDICTION AND VENUE

8    3.  Plaintiff sues for violation of civil rights pursuant to 42 U.S.C. Section 1983.

9         This Court has jurisdiction over such claims pursuant to 24 U.S.C. Sections

10        1331 and 1343.  Venue of this lawsuit is proper in the United States District

11        Court for the Southern District of California, located in San Diego,

12        California, because, at all times relevant hereto, the acts and/or omissions

13        giving rise to the liability of these defendants occurred in San Diego County,

14        California and all of the defendants reside(d) in San Diego County, California

15        and were employed in San Diego County, California with their principal

16        place of business in San Diego County, California.

17   4.  At all times relevant to this complaint, Plaintiff's Decedent resided in San

18        Diego County, California.  Plaintiff SABRINA SMITH is an Alabama

19        resident, is the natural and biological sister of the Decedent and is the

20        Administrator Ad Litem of the estate of the Decedent by Order of the Probate

21        Court for Marshall County, Alabama, supra.  Plaintiff VERNA CLARK is a

22        resident of Marshall County, Alabama and is the natural and biological

23        mother of the Decedent and is the sole heir of Decedent's estate, supra.  Due

24        to health related issues, Plaintiff Verna Clark desired her daughter, the

25        Plaintiff Sabrina Smith, to investigate the death of their familial loved one

26        and to prosecute a lawsuit in that regard following her investigation, and

27        Verna Clark has acceded to Sabrina Smith being duly appointed

Administrator Ad Litem.

### III.

### PARTIES

5.  Plaintiff SABRINA SMITH is the sister of Decedent Tommy Christopher Tucker. SABRINA SMITH is also the Administrator Ad Litem of the estate of Tommy Christopher Tucker, deceased. Plaintiff VERNA CLARK is the natural and biological mother of Tommy Christopher Tucker, deceased, and is a necessary party to this lawsuit in regard to claims for loss of familial companionship and loss of society. SABRINA SMITH and VERNA CLARK sue as Decedent's successor in interest to prosecute an action for violation of Decedent's constitutional rights and SABRINA SMITH as Administrator Ad Litem of the estate of Tommy Christopher Tucker, deceased where applicable.

6.  Defendant COUNTY OF SAN DIEGO (hereinafter "COUNTY") is a municipal corporation duly organized and existing under the laws of the State of California and operates, through the San Diego County Sheriff's Department, a central jail which houses prisoners in the County of San Diego, California.

7.  Defendant WILLIAM D. GORE was at all relevant times the Sheriff of San Diego County and as such was responsible for the policies, customs and practices of the San Diego County Sheriff's Department, including all policies, customs and practices relating to the operation of the San Diego County Central Jail.

8.  Defendants JOHN FERRIS, AARON HOXIE, MICHAEL JOHNSON, NIKHOLAS JOHNSON, BENJAMIN NAZERIAN and EDWARD WILT, at all times relevant to this complaint, were San Diego Deputy Sheriffs employed by the County of San Diego, and were employed by, and were the

agents of, the County of San Diego. They are sued in both their individual and official capacities.

9. Plaintiff is unaware of the true names and capacities of DOES 1 through 20, inclusive, and/or are truly ignorant of the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability. These defendants were agents, servants and employees of each other of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants and each of the defendants had approved or ratified the actions of the other defendants thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

## IV.

### FACTS

10. Plaintiffs reallege all prior paragraphs of this amended complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full herein.

11. On January 13, 2009, Plaintiffs' Decedent Tommy Christopher Tucker was incarcerated in the San Diego County Central Jail in San Diego County, California on charges related to domestic violence.

12. On January 13, 2009, Plaintiffs' Decedent was 30 years old. He was also obese. At the time of his death he was 6'1" tall and weighed 290 pounds.

13. Upon being booked into the central jail in the early hours of January 13, 2009, the Decedent was noted to be disturbed over his arrest and was placed into a safety cell. During a Psychiatry Safety Cell Evaluation, the Decedent

related that he had a history of psychiatric problems and had been treated in both outpatient and inpatient facilities as late as September, 2008 at Vista Balboa.    Decedent reported that he was taking Seroquel, Trazadone, Depakote and Buspar, all of these being strong psychiatric medications. Decedent denied being suicidal, signed a life contract, and was cleared to leave the safety cell.  Decedent was noted in jail medical records to have a psychotic disorder, schizophrenia and paranoia.  During the booking process and medical screening, Decedent also related that he had been an asthmatic since childhood (chronic) and that he had received an unspecified head injury previously that caused an uncontrolled seizure disorder.    Importantly, Decedent related to jail intake personnel that he suffered greatly from other serious mental issues including schizophrenia of the paranoid type, psychosis, depression and personality disorder. The Decedent further relayed that he had attempted suicide several times with the latest attempted suicide occurring on November 11, 2008.   Decedent was legally blind and hard of hearing. Decedent also related that he had previously been prescribed the medications Risperdal and Haldol for his mental issues and Albuterol for asthma. Decedent related that his mental illness was longstanding and not well controlled, and that there was a history of mental illness in his family. Decedent also related that he did not get along well with others.

14. Decedent had previously been incarcerated by the Defendants County and Sheriff due to Decedent's previous actual and threatened attempts to kill himself and for domestic violence charges.   The Defendants County and Sheriff were on actual and prior notice as early as the date of Decedent's January 13, 2009 incarceration that Decedent was seriously mentally ill, that he had untreated anger issues and episodes of domestic violence, that he had attempted to commit suicide previously, that he was paranoid, was depressed

1    and that he was schizophrenic.

2    15. Thereafter, the Decedent appeared in the Superior Court of California,
3        County of San Diego on January 16, 2009 and was ordered to undergo a
4        section 4011.6 exam (California Penal Code) and to be evaluated for
5        medication needs and then was to return to Court on January 20, 2009.

6    16. The 4011.6 examination was conducted on January 18, 2009 by the San
7        Diego Sheriff's Department, Medical Division, wherein Decedent was noted
8        to have "long standing history of mental illness since young age" and that the
9        is diagnosed with paranoid schizophrenia with multiple psychiatric
10       hospitalizations" He was noted to be a "cutter" meaning that he mutilated
11       himself with sharp objects and that he "is hearing voices tell him that
12       deputies are against him and he will be poisoned by jail's food." Decedent's
13       DSM-IV diagnosis on January 18, 2009 was mood disorder, personality
14       disorder, borderline personality trait, antisocial personality trait with "severe"
15       psychological stressors, seizure disorder and asthma.   A number of
16       medications were prescribed to Decedent including Depakote and Abilify;
17       however the Decedent refused them.   It was specifically noted in the
18       psychiatric evaluation that Decedent was paranoid, that his judgment was
19       impaired, that his impulse control was "fair", that he was depressed, anxious
20       and irritable.  Decedent's affect was noted to be "constricted" and he was
21       noted to be experiencing auditory hallucinations.

22   17. Later, and on January 23, 2009, the Decedent was seen by the San Diego
23       Sheriff's Department Medical Services Division, Psychiatric Outpatient
24       Service, because Decedent was requesting attention because he was
25       continuing to hear voices, continuing to have mood swings and depression.
26       Decedent was again noted to have only fair impulse control, his judgment had
27       worsened to "mild" from "impaired" and he was again diagnosed as being

psychotic. Decedent was prescribed medication and told to return in three (3) weeks. Decedent returned to the jail's outpatient psychiatric services on February 13, 2009 where he reported still hearing voices and his mood had not improved. As before, Decedent had only fair impulse control, mild judgment, and his insight was stated to be "partial recognition" and his diagnosis remained "psychosis." Decedent's psychological condition did not get better and in fact worsened to the point that Decedent was scheduled to be transferred to an inpatient facility to better treat his needs. However, and in direct indifference to Decedent's health, the transfer was cancelled on February 19, 2009, just three (3) days before Decedent's violent death at the hands of the Defendant Deputies. The Defendants County and Sheriff possessed ample documentation of Decedent's serious mental condition from the start of Decedent's incarceration until his death and had ample opportunity to properly treat Decedent and/or transfer him to a facility that could treat Decedent properly and humanely.

18. These in-jail health care providers well document Decedent's previously mentioned mental disturbances and also his serious personality disorder (i.e. huge inability to get along with others), his inability to react to situations rationally or to process information correctly in a situation, and that he heard voices in his head, especially ones telling him that the guards did not like him and that they were going to poison his food.

19. In addition to Decedent's serious mental issues, he had an unknown number of seizure episodes and during one of these he fell from the top bunk of his cell striking his head and requiring medical attention at the University of California San Diego Medical Center ("UCSD") on January 23, 2009.

20. According to the jail's medical records, the only treatment given to him for his mental disorders was medication. Other treatments were indicated and in

fact finally scheduled three (3) days prior to Decedent's death only to be cancelled. The failure to provide Decedent with mental health care beyond giving him pills and/or the failure to transfer him to a facility designed for persons such as Decedent with serious mental issues was beyond simple or gross negligence, and posed a great threat for serious harm to Decedent, rising to the level of deliberate indifference for Decedent's safety. Defendant's care for Decedent's serious mental illness amounted to placing a band aid on a ruptured femoral artery where injury was not likely but instead probable if not certain.

21. It is unknown to Plaintiff at this time whether Decedent was a pre-trial detainee or an inmate serving a jail sentence, or both, at the times material hereto. Hence, Plaintiff's allegations here are made alternatively under the 4th and 8th Amendments of the United States Constitution.

22. From the time of his incarceration until his death, the Decedent was not given proper medical treatment and medications to control his serious mental issues, to-wit to control his Schizophrenia, depression, personality disorder and paranoia and to help his blindness and inability to hear well. Upon information and belief, Defendant Sheriff Gore, the Defendant Deputy Sheriff officers and Does I-20 were acutely aware that the Decedent suffered from serious mental illness with multiple issues including hallucinations and paranoia, blindness and loss of hearing and seizures and that the Decedent was neither properly treated or medicated for these issues while incarcerated, and that Decedent's conditions never improved throughout his incarceration. Decedent's serious mental conditions went untreated and that, coupled with Decedent's inability to properly address situations, his deafness and his loss of sight proximately caused a situation with Defendant Deputy Sheriff Officers to develop leading to Decedent's avoidable and violent death by a

choking asphyxiation.

23. On the evening of February 22, 2009, upon information a "lock down" was ordered in Decedent's cell block. The Decedent did not immediately return to his cell and instead proceeded to a water fountain whereby he obtained a cup of water. The Decedent was allegedly ordered to go to his cell. According to statements provided to the San Diego County Medical Examiner, the Decedent tossed the water in the cup onto a deputy. To the extent that a cup of water can be considered a weapon, the weapon ceased to exist once depleted. The Decedent was in a jail and had no where to run and the Decedent posed no threat to the safety of anyone. Nevertheless, thereafter the Decedent was met by multiple deputies, including the Defendant deputies herein, and was subjected to unreasonable and excessive use of deadly force. This includes, inter alia, being sprayed with Oleoresin Capsicum ("O.C.") spray while Decedent was a known asthmatic, Decedent being forcibly held face down on the ground by the defendants while he was rear cuffed and being subjected to an illegal carotid artery restraint and choke by one or more deputies that asphyxiated Decedent and killed him.

24. According to the aforesaid Medical Examiner's Report, Defendants Nazerian, Ferris, Michael Johnson, Nikholas Johnson, Hoxie, Wilt and John Does eventually placed the Decedent face down on the ground. They also put a spit sock on the Decedent even though there was no indication that this was needed, which obviously further constricted the Decedent's already impaired breathing.

25. Defendants Wilt and Nazerian applied handcuffs to the Decedent while the decedent was face down. This put all of the Decedent's weight on his belly.

26. Defendants Nazerian, Ferris, Michael Johnson, Nikholas Johnson, Hoxie, Wilt and John Does forcibly held the decedent face down on the ground.

After being restrained in this fashion, the Decedent was rolled over onto his back and was noted to be unresponsive and cyanotic (i.e. he had turned blue), meaning that the Decedent was asphyxiated as a result of the choke force and/or the carotid artery hold that he was subjected to at the hands of the defendants. According to the Medical Examiner of the County of San Diego, Decedent's death was ruled a Homicide and the cause of death was anoxic encephalopathy, or death due to the starvation of the brain of oxygen.  The Medical Examiner's report, which includes the results of an autopsy, show in graphic detail that not only was the Decedent deprived of oxygen for a sufficient time to cause the death of his brain, Decedent's throat was crushed to the point that Emergency Responders could not place an endotracheal tube in the Decedent's throat.  Decedent also suffered numerous broken ribs and lacerations about his body.

27. On information and belief, while he was being restrained in the manner and fashion described above, and as he was losing his ability to breath, the Decedent pleaded with the defendants to relax their restraint until such time as Decedent's throat was crushed and he could no longer breathe.

28. Not only did the autopsy report filed by the Office of the Medical Examiner of the County of San Diego as stated, above, attribute the cause of the death by homicide to anoxic encephalopathy, the anoxic encephalopathy was stated to be  "due to police restraint efforts including pepper spray and carotid restraint" (emphasis added).  The report noted, inter alia, that the Decedent suffered acute hemorrhage of the right cervical (neck) musculature, carotid sheath and jugular vein.  To even a layman, Decedent was not only physically restrained by multiple deputies, he was choked to death by one or more of them making Decedent's death a homicide.

29. As a direct and proximate result of the manner in which the Decedent was

restrained by the defendant officers and choked, Decedent's brain was completely deprived of oxygen for a sufficiently long time to cause hypoxia and death.

30. At no time during the time that the Decedent was being restrained did any of the defendants, despite a constitutional obligation to do so, intervene to protect the decedent or object to the manner in which the Decedent was being restrained and choked.

31. The incident was captured on a jail video surveillance tape; however the Plaintiffs' counse's repeated efforts to obtain the video of Decedent's death have all been denied by the Defendant County and Defendant Sheriff on various grounds. Due to the lack of this crucial evidence, Plaintiffs reserve the right to amend their Complaint to conform to this evidence.

32. Upon Defendant's realization that Decedent was cyanotic and not breathing, emergency medical technicians (EMT's)were called. The first responders noted that the Decedent had bright red froth coming from his mouth and inquired of the deputies whether there had been any trauma. The EMT's were advised that there was no trauma to the Decedent—just pepper spray. The EMT's transported the Decedent to UCSD by ambulance. The UCSD resident noted that the Decedent arrived by ambulance "unannounced", indicating that no one from the jail had bothered to call UCSD and let them know that a seriously injured inmate was on the way. The Sr. Resident noted red frothy blood coming from Decedent's mouth in the medical records and then noted that he had inquired numerous times to numerous deputies as to whether there had been any trauma. The Sr. Resident noted that all deputies denied multiple times that the Decedent received any trauma. Defendant's willful misrepresentation of the truth to the medical personnel that were attending Decedent was made purposely to cover up the deputies'choke-

induced homicide.  These deliberate untruths undoubtedly sent emergency
department medical personnel in the wrong direction for treating the
Decedent, thereby deliberately delaying a proper diagnosis and treatment by
which the Decedent may have otherwise lived. Regardless, the Decedent did
not recover from the injuries he received at the hands of the defendants and
despite all efforts to resurrect Decedent's brain function over the next few
days, his condition never improved from the time of his admission to UCSD.

Accordingly, the Decedent was pronounced brain dead on February 25, 2009
after MRI confirmation of massive brain injury from anoxia.

33. As a direct and proximate result of the defendants' wrongful conduct, the
plaintiff and the plaintiff's Decedent sustained substantial damages including,
inter alia, extreme pain and suffering, loss of life, loss of familial association
and violation of constitutional rights.

<u>V.</u>

FIRST CAUSE OF ACTION

<u>Right of Association – 42 U.S.C. 1983</u>

<u>[By Plaintiff VERNA CLARK and Decedent TOMMY
CHRISTOPHER TUCKER and SABRINA SMITH against all defendants]</u>

Plaintiffs reallege all prior paragraphs of this amended complaint and incorporate
the same herein by this reference as if those paragraphs were set forth in full herein.

34. Defendants and John Does, inclusive, acting under color of state law,
deprived Tommy Christopher Tucker of his rights under the United States
Constitution to be free from punishment without due process of law, free
from cruel and unusual punishment and to be free from the use of excessive
force by law enforcement by restraining, choking and battering him
unreasonably and with deliberate indifference to the safety and welfare of

Tommy Christopher Tucker, including watching him be suffocated and die. By these acts, the defendants violated Tommy Christopher Tucker's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the First, Fourth, Eighth and Fourteenth Amendments. The officers used excessive and deadly force as alleged above against Tommy Christopher Tucker when there was no cause for the same, with a purpose to cause harm that is unrelated to the legitimate use of force. The force was used to make Tommy Christopher Tucker suffer and to punish him for tossing a cup of water on a deputy. The Decedent was incarcerated in a state of the art jail facility currently in "lock down," the Decedent had no weapon, and there was no place for the Decedent to run or hide. The force used on the Decedent to punish him for tossing a cup of water on a guard was deadly force from multiple guards and was unreasonable and uncalled for and performed with a deliberate indifference to the safety and welfare of Tommy Christopher Tucker.

35. The deprivation of the rights alleged above has destroyed the Constitutional rights of Tommy Christopher Tucker and Verna Clark to the familial love, society and companionship of mother and son protected by the substantive due process clause of the Fourteenth Amendment.

36. The deprivation of the constitutional rights pled in this cause of action also resulted from an unwritten custom, policy and practice in the San Diego Sheriff's Department of allowing the use of deadly/lethal cartoid artery restraints that included choking, the use of the spit sock and restraints in situations controllable by lesser means and by means that are suitable to deal with someone who was overweight and suffering from asthma and other medical problems and Defendants' use of this deadly force constituted

1   deliberate indifference to the Constitutional rights of Tommy Christopher

2   Tucker which was the moving force behind the Constitutional violations in

3   this cause of action.   Moreover, defendants were on notice of these

4   unreasonable practices as a result of prior incidents at the jail where detainees

5   or inmates died under similar circumstances, such as the death of Marshawn

6   Washington, Jr., on February 2, 2001.  On information and belief, there have

7   been other similar deaths since that time and prior to the death of the

8   Decedent in this case.  Upon information and belief, all Defendants are aware

9   from similar incidences elsewhere and from standard police training that the

10   use of a carotid maneuver and/or choke hold is likely to cause grave harm

11   and/or death, and that the same should be used only when absolutely

12   necessary to save the life of another and then only when no other option is

13   available.  Such extreme circumstances were not present here and various and

14   other non-lethal options were available to the Defendants to deal with

15   Decedent.

16   37. The conduct alleged herein violated Tommy Christopher Tucker's rights as

17   alleged above thereby resulting in a deprivation of those rights, all of which

18   legally, proximately, foreseeably and actually caused plaintiff Verna Clark

19   and plaintiff's decedent to suffer emotional distress, pain and suffering, and

20   further damages according to proof at the time of trial.

21   38. The conduct of the defendants as alleged herein also amounted to willful and

22   wanton conduct the award of exemplary or punitive damages against these

23   defendants in an amount according to proof at the time of trial in order to

24   deter the defendants from engaging in similar conduct and to make an

25   example by way of monetary punishment.  Plaintiffs are also entitled to

26   attorney fees and costs of suit herein pursuant to statute.

27                                           <u>VI.</u>

SECOND CAUSE OF ACTION

Wrongful Death – 42 U.S.C. §§ 1983, 1988

[By Plaintiffs SABRINA SMITH, VERNA CLARK and TOMMY

CHRISTOPHER TUCKER against all defendants]

Plaintiffs reallege all prior paragraphs of this amended complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full herein.

39..    Defendants and John Does, inclusive, acting under color of state law, committed wrongful acts which proximately caused the death of TOMMY CHRISTOPHER TUCKER.  Specifically, the defendants and John Does, inclusive, deprived Tommy Christopher Tucker of his rights under the United States Constitution to be free from punishment without due process of law, free from cruel and unusual punishment and to be free from the use of excessive force by law enforcement by unreasonably and excessively restraining him with deliberate indifference to the safety and welfare of Tommy Christopher Tucker, including watching him suffocate and die, improperly using a carotid artery hold and choking him knowing that it could and did cause serious bodily injury to Tommy Christopher Tucker. By these acts, the defendants violated Tommy Christopher Tucker's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the First, Fourth, Fifth, Eighth and Fourteenth Amendments.  The officers used excessive force as alleged above against Tommy Christopher Tucker, with a purpose to cause harm that is unrelated to the legitimate use of force.  The force was used to make Tommy Christopher Tucker suffer and to punish him as noted, above.  The force used was unreasonable and performed with a deliberate indifference to the safety and welfare of Tommy Christopher Tucker.

40. The deprivation of the rights alleged above has destroyed the Constitutional rights of Verna Clark and Tommy Christopher Tucker to the familial love, society and companionship as mother and son protected by the substantive due process clause of the Fourteenth Amendment.

41. The deprivation of the constitutional rights pled in this cause of action also resulted from an unwritten custom, policy and practice in the San Diego Sheriff's Department of using unreasonable and excessive restraint techniques, including the use of a carotid artery hold, choking, applying excessive weight and force on the decedent while he was face down on the ground and use of the spit sock as being deliberately indifferent to the Constitutional rights of Tucker which was the moving force behind the Constitutional violations in this cause of action.

42. The conduct alleged herein violated Tommy Christopher Tucker's rights alleged above thereby resulting in a deprivation of plaintiff's rights alleged above which has legally, proximately, foreseeably and actually caused plaintiffs to suffer emotional distress, pain and suffering, and further general and special damages according to proof at the time of trial.

43. The conduct of the defendants as alleged herein also amounted to willful and wanton conduct the award of exemplary or punitive damages against these defendants in an amount according to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to make an example by way of monetary punishment.  Plaintiffs are also entitled to attorney fees and costs of suit herein pursuant to statute.

## VII.

### THIRD CAUSE OF ACTION

### Civil Rights Violation – 42 U.S.C. 1983

[By Plaintiffs Sabrina Smith as Successor in Interest to the

Estate of Tommy Christopher Tucker and Verna Clark against all defendants]

Plaintiffs reallege all prior paragraphs of this amended complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full herein.

44. Defendants and John Does, inclusive, acting under color of state law, deprived Tommy Christopher Tucker of his rights under the United States Constitution to be free from punishment without due process of law, free from cruel and unusual punishment and to be free from the use of excessive force by law enforcement by punishing his for asking to speak to a supervisor and then battering him unreasonably and with deliberate indifference to the safety and welfare of Tommy Christopher Tucker which resulted in serious bodily injury to Tommy Christopher Tucker and indeed resulted in his death. By these acts, the defendants violated Tommy Christopher Tucker's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. The officers used excessive force as alleged above against Tommy Christopher Tucker, with a purpose to cause harm that is unrelated to the legitimate use of force. The force was used to make Tommy Christopher Tucker suffer and to punish him for tossing a cup of water. The force used was unreasonable and performed with a deliberate indifference to the safety and welfare of Tommy Christopher Tucker.

45. The deprivation of the constitutional rights pled in this cause of action also resulted from an unwritten custom, policy and practice in the San Diego Sheriff's Department of unreasonable and excessive use of restraint techniques, including the use of a carotid artery hold, choking to the point of asphyxiation, applying excessive weight and force on the decedent while he was face down on the ground and use of the spit sock as being deliberately

1    indifferent to the Constitutional rights of Tucker which was the moving force

2    behind the Constitutional violations in this cause of action.

3    46. The conduct alleged herein violated Tommy Christopher Tucker's rights

4    alleged above thereby resulting in a deprivation of plaintiffs' rights alleged

5    above which has legally, proximately, foreseeably and actually caused

6    plaintiffs to suffer emotional distress, pain and suffering, and further damages

7    according to proof at the time of trial.

8    47. The conduct of the defendants as alleged herein also amounted to willful and

9    wanton conduct the award of exemplary or punitive damages against these

10    defendants in an amount according to proof at the time of trial in order to

11    deter the defendants from engaging in similar conduct and to make an

12    example by way of monetary punishment.  Plaintiffs are also entitled to

13    attorney fees and costs of suit herein pursuant to statute.

14    **VIII.**

15    **FOURTH CAUSE OF ACTION**

16    **Civil Rights Violation – 42 U.S.C. 1983**

17    **[By Plaintiffs Sabrina Smith as Successor in**

18    **Interest to the Estate of Tommy Christopher**

19    **Tucker and Verna Clark against all defendants]**

20

21    Plaintiffs reallege all prior paragraphs of this amended complaint and incorporate the

22    same herein by this reference as if those paragraphs were set forth in full herein.

23    48. Defendants and John Does, inclusive, acting under color of state law,

24    deprived Tommy Christopher Tucker of his rights under the United States

25    Constitution to adequate medical care, including the right to receive standard,

26    recognized medical and psychological care and medications and the right to

27    be housed in an appropriate facility given his known and documented serious

and life threatening medical and mental conditions. Decedent, as stated above, was known to suffer from and was documented to suffer from serious medical conditions such as uncontrolled seizure disorder, chronic asthma, obesity, blindness and loss of hearing, and even more serious and chronic and longstanding mental issues that affected not only the Decedent but also affected his interactions with others in the jail including the Defendants. This denial of the right to adequate medical care was not simply mere negligence or gross negligence, but it was so egregious as to constitute deliberate indifference to the serious medical needs and the safety and welfare of Tommy Christopher Tucker which resulted in serious bodily injury to Tommy Christopher Tucker and indeed resulted in his death. By these acts, the defendants violated Tommy Christopher Tucker's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. The denial of adequate medical care as alleged above against Tommy Christopher Tucker, was intended and did cause harm that is unrelated to the legitimate use of force. This denial of adequate medical care was done with reckless indifference for Decedent's well being during Decedent's incarceration while documented medical reasons existed for different medical care. The extent to which Tommy Christopher Tucker's medical and mental conditions were known to exist by Defendants and the gross lack of treatment for the same or transfer to a facility better suited for the same is blatant and clear and was done with a deliberate indifference to the safety and welfare of Tommy Christopher Tucker.

49. The deprivation of the constitutional rights pled in this cause of action also resulted from an unwritten custom, policy and practice in the San Diego

Sheriff's Department of denying adequate medical care to seriously ill detainees in San Diego County jails and was the moving force behind the Constitutional violations in this cause of action.

50. The conduct alleged herein violated Tommy Christopher Tucker's rights alleged above thereby resulting in a deprivation of plaintiffs' rights alleged above which has legally, proximately, foreseeably and actually caused plaintiffs to suffer emotional distress, pain and suffering, and further damages according to proof at the time of trial.

51. The conduct of the defendants as alleged herein also amounted to willful and wanton conduct the award of exemplary or punitive damages against these defendants in an amount according to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to make an example by way of monetary punishment. Plaintiffs are also entitled to attorney fees and costs of suit herein pursuant to statute.

WHEREFORE, plaintiffs demand the following relief jointly and severally against all defendants:

a) a declaration that defendants violated the federal civil rights of plaintiffs;

b) compensatory damages for physical, emotional, and economic injuries suffered by plaintiffs by reason of defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial;

c) punitive damages against the individual defendants to the extent allowable by law;

d) attorneys fees;

e) the costs and disbursements of this action; and

f) such other and further relief as appears just and proper.

Dated:        August 2, 2011

R. Stan Morris
Jonathan W. Cartee

Declaration of Service

I, R. Stan Morris, declare:

On August 2, 2011, I served the following documents: **AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS (42 U.S.C. SEC. 1983)** in the following manner:

By placing a copy in a separate envelope, with postage fully repaid, for each addressee named below and depositing each in the U.S. Mail at Guntersville, Alabama.

And

By electronic filing, I served each of the above referenced documents by E-filing, in accordance with the rules governing the electronic filing of documents in the United States District Court for the Southern District of California.


Thomas E. Montgomery, County Counsel
David L. Brodie, Senior Deputy
Ricky Sanchez, Senior Deputy
1600 Pacific Highway, Room 355
San Diego, California


Executed on August 2, 2011

R. Stan Morris
Jonathan W. Cartee

Cartee & Morris, LLC
2325 Henry Street
Guntersville, Al 35976
256-582-9500
256-582-0200 fax