# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA SMITH, et al., <br><br>　　　　　　　　　　Plaintiffs, <br>　　vs. <br><br>COUNTY OF SAN DIEGO, et al., <br><br>　　　　　　　　　　Defendants. | CASE NO. 11-CV-0356-JLS (WVG) <br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** <br><br>(ECF No. 18) |

Presently before the Court is Defendants' motion to dismiss Plaintiffs' First Amended Complaint ("FAC"). (MTD, ECF No. 18) Also before the Court are Plaintiffs' opposition (Opp'n, ECF No. 20) and Defendants' reply to that response (Reply, ECF No. 21). For the reasons stated below, the Court **DENIES** Defendants' motion.

## BACKGROUND[1]

Plaintiffs Verna Clark and Sabrina Smith are the mother, as heir, and the sister, as administrator ad litem, of Decedent Tommy Christopher Tucker. Decedent was incarcerated in the San Diego County Central Jail on January 13, 2009. Decedent was obese, had a history of psychiatric problems including "psychotic disorder, schizophrenia[,] and paranoia," as well as chronic asthma and a seizure disorder. Decedent was legally blind and hard of hearing. Decedent was seen by San Diego County Sheriff's Department Medical Services on at least three occasions, with no indication of his condition improving. Following the most recent examination on February 13, 2009, Decedent was scheduled to be transferred to an inpatient facility. This transfer

---

[1] The facts in this background section are taken from the FAC. (FAC, ECF No. 16.)

1  was cancelled on February 19, 2009.  Decedent also had an unknown number of seizures during
2  his incarceration, and following one episode where he struck his head falling from the top bunk, he
3  was taken to the University of California, San Diego Medical Center ("UCSD hospital") for
4  treatment.

5  On February 22, 2009, a "lock down" was ordered in Decedent's cell block.  When
6  Decedent disobeyed instructions and got a cup of water from the water fountain, he was again
7  ordered to his cell.  Decedent then threw the cup of water at a deputy, whereupon he was met by
8  multiple deputies, sprayed with Oleoresin Capsicum ("OC") spray, forcibly held face down on the
9  ground, rear cuffed, had a spit sock put over his head, and was subjected to "an illegal carotid
10 artery restraint and choke by one or more deputies that asphyxiated Decedent and killed him."
11 Decedent pled with Defendant deputies that he couldn't breathe.  Once Decedent had been
12 restrained, he was rolled over onto his back whereupon Defendant deputies noted Decedent to be
13 unresponsive and cyanotic.

14 Emergency medical technicians ("EMTs") were called, and noted a bright red froth coming
15 from Decedent's mouth.  The EMTs asked the Defendant deputies whether the Decedent had
16 suffered any trauma, and were advised that he had not.  The EMTs could not place an endotracheal
17 tube in Decedent's throat because it had been crushed.  Decedent "also suffered numerous broken
18 ribs and lacerations about his body."  Decedent was taken to UCSD hospital by ambulance, but the
19 Jail had not alerted the hospital that Decedent was on his way.  The senior resident at UCSD
20 hospital also noted a red froth coming from Decedent's mouth and inquired numerous times of
21 Defendant deputies whether Decedent had suffered any trauma.  "[A]ll deputies denied multiple
22 times that the Decedent received any trauma."

23 Decedent did not recover from these injuries and was pronounced brain dead on February
24 25, 2009 after an MRI confirmed massive brain injury from anoxia.  The Medical Examiner's
25 report based on the autopsy of Decedent concluded that the cause of death was "homicide. . . due
26 to police restraint efforts including pepper spray and carotid restraint."

27 Plaintiffs now bring this suit alleging civil rights violations under 42 U.S.C. § 1983.
28 Plaintiffs claim that Defendants' "failure to provide Decedent with mental health care beyond

giving him pills and/or the failure to transfer him to a facility designed for persons such as Decedent . . . posed a great threat for serious harm to Decedent, rising to the level of deliberate indifference for Decedent's safety." (*Id.* at 9)  Plaintiffs also allege Defendants caused Decedent's death, violating his First, Fourth, Eighth, and Fourteenth Amendment rights. (*Id.* at 14)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 US 662 , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.*  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation

omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* Moreover, "for a complaint to be dismissed because the allegations give rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading." *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

## ANALYSIS

Defendants challenge Plaintiff Sabrina Smith's standing to sue as Decedent's legal heir, Plaintiffs' Fourth Amendment claims as personal to Decedent, and Plaintiffs' allegations of inadequate medical care under the Eighth Amendment for failure to state a cognizable claim. (MTD 3–4) The Court examines each of these arguments in turn, and rejects them all.

**1. Plaintiff Sabrina Smith Has Standing**

Defendants argue Plaintiff Sabrina Smith, Decedent's sister and administrator ad litem of his estate, should be dismissed for lacking standing to sue for wrongful death under either Alabama or California law. (MTD 3) However, as Plaintiff's opposition makes clear, Sabrina Smith brings these claims on behalf of Decedent's estate, not on her own behalf as Decedent's heir. (Opp'n 7) To the extent that the FAC alleged claims on behalf of Sabrina Smith on her own behalf, she has apparently abandoned those claims.

The Court looks to the law of the forum state to determine whether Plaintiff Sabrina Smith has standing to bring a claim under Section 1983 on Decedent's behalf as Administrator Ad Litem of Decedent's estate. 42 U.S.C. § 1988(a) (stating that under the Civil Rights title where the federal laws "are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held. . . shall be extended to and govern the said courts"); *See Robertson v. Wegmann*, 436 U.S. 584, 588–90 (1978) (stating that in a Section 1983 claim, "the decision as to the applicable survivorship rule is governed by 42 U. S. C. § 1988").

California Civil Procedure Code § 377.20 provides that "[e]xcept as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but

survives subject to the applicable limitations period." Further, California Civil Procedure Code § 377.60 allows a wrongful death cause of action to be asserted "by the decedent's personal representative on their behalf." *See Byrd v. Guess*, 137 F.3d 1126 (9th Cir. 1998) ("It is also undisputed that California law . . . permits survival actions to be brought by the personal representative of the estate of the deceased or by the deceased's successors in interest.")[2]  For these reasons, the Court determines Plaintiffs are proper parties and **DENIES** Defendants' motion to dismiss Sabrina Smith for lack of standing.

**2. Fourth Amendment Claims Are Properly Brought by Decedent's Representative**

Defendants similarly argue that Plaintiffs may not assert Fourth Amendment violations on behalf of Decedent because Fourth Amendment rights are "personal rights that may not be vicariously asserted." (MTD 4)  Although Defendants are correct insofar as personal rights ordinarily may not be vicariously asserted, *Alderman v. United States*, 394 U.S. 165, 174 (1969), an exception to this general rule is broadly recognized for claims brought under Section 1983. *See, e.g.*, *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998) (stating the general rule that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights, but that "[i]n § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action.") (citing 42 U.S.C. § 1988(a); *Smith v. City of Fontana*, 818 F.2d 1411, 1416–17 (9th Cir. 1987)).  For the same reasons discussed above, the Court finds California law authorizes Plaintiffs to bring this action on behalf of Decedent, and thus **DENIES** Defendants' motion to dismiss the Fourth Amendment claims.

**3. Plaintiffs Allege a Cognizable Constitutional Violation for Inadequate Medical Care**

Lastly, Defendants argue that Plaintiffs have not alleged sufficient facts to support a claim for inadequate medical care because Plaintiffs have not adequately shown Defendants were

---

[2] Indeed, Defendants concede that Sabrina Smith has standing to sue as Administrator Ad Litem on behalf of Decedent's estate in their reply brief. (Reply 1-2)  Defendants continue to challenge the propriety of Plaintiffs' suit on the basis that the Court should only allow one representative plaintiff to proceed in this case because "the representative plaintiffs may have conflicts in litigating this action and making decisions on decedent's behalf." (Reply 2)  However, Defendants do not cite any authority for this request and, without more, the Court declines to dismiss a party to this case for the reason of hypothetical future conflicts.

deliberately indifferent to Decedent's serious medical needs. (MTD 4)

An inmate[3] has an Eighth Amendment right to adequate physical and mental health care. *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). Deliberate indifference to the serious medical needs of an inmate is not only inconsistent with the basic standards of decency but, more importantly, is antithetical to the Eighth Amendment's proscription of "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

A determination of deliberate indifference involves a two-step analysis consisting of both objective and subjective inquiries. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). First, the plaintiff must demonstrate a serious medical need such that failure to provide treatment could "result in further significant injury" or "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Second, the plaintiff must show that the defendant's response to the medical need was deliberately indifferent. *Jett*, 439 F.3d at 1096 (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)). Deliberate indifference consists of (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. *Id.* Such indifference may be manifested when "prison officials deny, delay[,] or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). This standard is one of subjective recklessness. *Farmer*, 511 U.S. at 839-40. Therefore, mere negligence in responding to and treating a medical condition does not rise to the standard of deliberate indifference. *Estelle*, 429 U.S. at 106. Rather, the defendant must have acted or failed to act despite knowing of a substantial risk of serious harm. *Farmer*, 511 U.S. at 843 n.8.

//

---

[3] Although Plaintiffs state they don't know whether Decedent was "a pre-trial detainee or an inmate serving a jail sentence, or both" at the time of the incidents underlying this lawsuit, for these purposes that distinction is immaterial. (FAC 9) "Claims of failure to provide care for serious medical needs, when brought by a detainee . . . who has been neither charged nor convicted of a crime, are analyzed under the substantive due process clause of the Fourteenth Amendment . . . under traditional Eighth Amendment standards." *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003). In either case, "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Id.* (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).

Plaintiffs' allegations of inadequate medical care in violation of the Eighth Amendment rely upon two distinct factual bases. (*See* Opp'n 13–14) First, the FAC alleges Defendants interfered with or were deliberately indifferent to Decedent's psychiatric care by failing to care for his mental illness during his incarceration. (FAC ¶ 48-49) Second, although not included in the stated causes of action, the FAC also alleges that Defendants interfered in Decedent's medical care following the choking incident by withholding or obscuring crucial information from EMTs and hospital personnel. (FAC ¶ 32) The Court liberally interprets the FAC and examines whether Plaintiffs adequately state an Eighth Amendment violation under both of these theories below.

### A. Decedent's Inadequate Psychiatric and Medical Care

Plaintiffs allege a deliberate indifference on the part of the Defendants in responding to Decedent's mental illness and intentionally interfering with prescribed treatment by jail officials. (Opp'n 13) Plaintiffs state the facts alleged show that Defendants were "acutely aware of plaintiff's medical conditions . . . through reports from the plaintiff, medical records, and evaluations." (*Id.*) Decedent had notified jail personnel that he had a history of psychiatric problems, was taking several "strong psychiatric medications," and had attempted suicide several times. (FAC ¶ 13.) Decedent's jail medical records noted that he had a "psychotic disorder, schizophrenia and paranoia." (*Id.*) Further, some jail personnel apparently determined, after the Decedent refused medications, to transfer Decedent to an inpatient facility. (*Id.* ¶ 20) Allegedly disregarding Decedent's medical needs, jail officials cancelled this transfer. (*Id.*) Plaintiffs state that Defendants' failure to give Decedent "proper medical treatment and medications to control his serious mental issues, to-wit to control his Schizophrenia, depression, personality disorder and paranoia and to help his blindness and inability to hear well . . . caused a situation with Defendant Deputy Sheriff Officers to develop leading to Decedent's avoidable and violent death by a choking asphyxiation." (*Id.* ¶ 23)

Deliberate indifference to medical needs amounts to an Eighth Amendment violation only if the prisoner's need for medical treatment was "serious." *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d

at 1059. This requires "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment. . . [including] a medical condition that significantly affects the individual's daily activities." *Id.* at 1059–60. A complete failure to treat the prisoner is not a prerequisite. *Ortiz v. Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (reversing grant of summary judgment where prison nurses had been made aware of and disregarded evidence of complications of a prisoner's head injury). Rather, deliberate indifference can be established with evidence showing either: (1) that "prison officials deny, delay or intentionally interfere with medical treatment;" or (2) the insufficient way in which medical care is provided. *McGuckin*, 974 F.2d at 1059 (quoting *Hutchinson,* 838 F.2d at 394).

Here, the Court is able to draw the reasonable inference that Defendants exhibited deliberate indifference towards Decedent's serious mental and physical impairments. Plaintiffs have adequately alleged Defendants were aware of Decedent's medical needs. Further, the jail had diagnosed Decedent and determined that a transfer to an inpatient facility was warranted, indicating that jail officials were aware that attempted treatments had failed to adequately address Decedent's condition. The allegations support an inference that Defendants, knowing of Decedent's need for a different treatment, disregarded Decedent's serious medical needs and therefore deliberately denied, delayed, or interfered with that treatment, thus exhibiting deliberate indifference. For these reasons, this Court finds that Plaintiffs have alleged sufficient facts to state a claim for inadequate psychiatric and medical care.

### B. Interference with Medical Care Following Choke Hold

Plaintiffs further allege that Defendant deputies intentionally interfered in Decedent's course of treatment when they lied to both the EMTs and to the senior resident at UCSD hospital about the trauma Decedent had suffered as a result of Defendants' actions. (FAC 12–13) Plaintiffs allege that as a result of repeated lies and omissions, the hospital's medical staff was unable to immediately identify and treat Decedent's injuries.   (Opp'n 13–14)

"Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (citing *Estelle*, 429 U.S. at 103–04). Further, a jail official violates the

1  Eighth Amendment where that official "intentionally den[ies] or delay[s] access to medical care or
2  intentionally interfer[es] with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. "[T]he
3  more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions
4  in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference'
5  on the part of the defendant." *McGuckin*, 974 F.2d at 1061. *See also Hallet v. Morgan*, 296 F.3d
6  732, 746 (9th Cir. 2002) (deliberate indifference occurs where a plaintiff "demonstrated that
7  delays occurred to patients with problems so severe that delays would cause significant harm and
8  that Defendants should have known this to be the case").

Here, Decedent could not make his medical problems (a crushed trachea and broken bones) known to medical personnel himself. Further, Defendants knew the cause of the immediate injury to Decedent, having caused the injury themselves, and failed to inform medical personnel of any trauma suffered. Providing misinformation to treating medical personnel may certainly constitute intentional interference with medical care. The injuries to Decedent were severe enough for both the EMTs and the senior resident at UCSD hospital to question Defendants about possible trauma numerous times. Defendants' alleged lies about this trauma took place under circumstances of serious need, in which medical professionals were trying to save Decedent's life. Thus, Plaintiffs' allegations support an inference that Defendants were deliberately indifferent to Decedent's serious needs. For these reasons, this Court finds that Plaintiffs have alleged sufficient facts to state a claim for interference with Decedent's medical care following the choke hold.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff Sabrina Smith and Plaintiffs' claims under the Fourth and Eighth Amendments.

**IT IS SO ORDERED**.

DATED: February 27, 2012

Honorable Janis L. Sammartino
United States District Judge