R. Stan Morris, Esq.
Jonathan W. Cartee, Esq.
CARTEE & MORRIS, LLC
2325 Henry Street
Guntersville, Alabama 35976
TEL: (256) 582-9500
FAX: (256) 582-0200
E-Mail: stan@carteemorris.com

Julia Yoo, Esq.
IREDALE & YOO, APC
105 West F. Street, 4th Fl.
San Diego, CA 92101

Attorneys for Plaintiffs
SABRINA SMITH AND VERNA CLARK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA SMITH, as Administrator Ad Litem of the Estate of Tommy Christopher Tucker, Deceased and VERNA CLARK in her capacity as Successor in Interest to Tommy Christopher Tucker,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, a municipal corporation; Sheriff WILLIAM D. GORE; Deputy Sheriff JOHN FERRIS; Deputy Sheriff AARON MOXIE; Deputy Sheriff MICHAEL JOHNSON; Deputy Sheriff NIKHOLAS JOHNSON; Deputy Sheriff BENJAMIN NAPERIAN; Deputy Sheriff EDWARD WILT, and DOES 1-20 inclusive,<br><br>Defendants. | Case No. 11CV0356-JLS(WVG)<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Date: September 26, 2013<br>Time: 1:30 p.m. |

Plaintiffs SABRINA SMITH and VERNA CLARK, by and through their attorneys of record, submit the following Memorandum of Contentions of Fact and Law in compliance with Local Rule 16.3 of the Federal Rules of Court for the Southern District of California.

## FACTUAL CONTENTIONS

A. STATEMENT OF FACTS

The Plaintiffs in this action are SABRINA SMITH and VERNA CLARK.

The defendants in this action are the COUNTY OF SAN DIEGO, Sheriff WILLIAM D. GORE, and Deputy Sheriffs JOHN FERRIS, AARON HOXIE, MICHAEL JOHNSON, NIKHOLAS JOHNSON, BENJAMIN NAZERIAN and EDWARD WILT.

On January 13, 2009, Tommy Tucker was booked into the San Diego County Central Jail related to domestic dispute with his girlfriend. Tommy was 35 years old and suffered from numerous psychological and physical disorders including an enlarged heart, asthma, seizure disorder and gross obesity (290 pounds). When Tommy was booked into the jail, the evaluation showed that Tommy had a psychotic disorder, schizophrenia and paranoia. Tommy related that he had been an asthmatic since childhood (chronic) and that he had previously suffered an unspecified head injury that caused an uncontrolled seizure disorder.[1] Tommy related to jail personnel the following: that he suffered from schizophrenia of the paranoid type, psychosis, depression and personality disorder; that he had attempted suicide several times with the latest attempted suicide in 2008; that he was legally blind and hard of hearing; that his mental illness was longstanding and not well controlled, and there was a history of mental illness in his family.

---

[1] Tommy had an unknown number of seizure episodes while in the Central Jail and during on of these episodes he fell from the top bunk of his cell, striking his head and requiring emergency medical attention at UCSD on January 23, 2009.

Tommy had previously been incarcerated by the Sheriff due to his suicide attempts and for domestic disturbance. Tommy's health issues were documented and known to the jail officials. The Defendants were on notice on January 13, 2009 that Tommy was seriously mentally and physically debilitated. Tommy underwent a PC Section 4011.6 exam whereupon he was noted to have "long standing history of mental illness since young age" and he was "diagnosed with paranoid schizophrenia with multiple psychiatric hospitalizations." He was noted to be a "cutter" meaning that he mutilated himself and that he "is hearing voices tell him that deputies are against him and he will be poisoned by jail's food." Tommy 's DSM-IV diagnosis on January 18, 2009 was mood disorder, personality disorder, borderline personality, antisocial personality trait with "severe" psychological stressors, seizure disorder and asthma. It was noted in the evaluation that Tommy was paranoid, that his judgment was impaired, that he was depressed, anxious and irritable. His affect was noted to be "constricted" and he was noted to be experiencing auditory hallucinations.

On January 23, 2009, Tommy was seen by the Psychiatric Outpatient Service because he was continuing to hear voices, have mood swings and depression. Tommy was again noted to have only fair impulse control, his judgment had worsened and he was again diagnosed as being psychotic. Tommy was prescribed medication and told to return in three (3) weeks. Tommy returned to psychiatric services on February 13, 2009, still hearing voices. Tommy had only fair impulse control, mild judgment, and his insight was stated to be "partial recognition" and his diagnosis remained "psychosis." Tommy's psychological condition had deteriorated to the point that Tommy was scheduled to be transferred to an inpatient facility. This transfer was cancelled by the jail on February 19, 2009, just three (3) days before Tommy Tucker was killed.

On February 22, 2009 at approximately 8:20 p.m., a "lock down" was

1    ordered on Tommy's jail floor (6D) due to a disturbance elsewhere. Tommy was
2    standing outside his cell, which is located on the upper tier of a two tier pod when
3    the lock-down was announced. Deputies testified that there is no defined minimum
4    or maximum time for an inmate to lock down, only that they are supposed to go to
5    their cells when told. When the inmates in 6D were returning to their cells, Tommy
6    went downstairs to a hot water spigot with a plastic cup, likely in order to get hot
7    water to make coffee. After he retrieved water, Tommy walked back across the first
8    floor and walked up the stairs that lead to his cell. The stairs to the second floor
9    lead to nowhere else except to Tommy's "open" cell. At that time, all other second
10   tier cells were locked. Tommy had almost made his way to the top of the stairs
11   when two deputies entered the unit. One deputy immediately yelled at Tommy that
12   he was to lock down when told to do so, and not to go after water. Tommy stopped
13   momentarily on the steps and turned to listen to the deputy, and then continued to
14   walk up the steps. The second deputy began to yell also, and motioned with his arm
15   for Tommy to return to his cell, repeating that Tommy was not supposed to get
16   water. This caused Tommy to turn around to face the deputy who was yelling at him
17   who had followed Tommy up the stairs and was now standing half way up the steps.

       According to the Medical Examiner, due to Tommy's various psychological
19   and epileptic issues, this activity caused Tommy to become excited and agitated,
20   resulting in a verbal altercation with the deputy standing halfway up the stairs. This
21   deputy instructed Tommy to pour out his water, which Tommy did at the top of the
22   stairs. In an unbroken sequence of events, Tommy, now on the second tier, backed
23   away from the deputy toward the direction of his cell while still facing the direction
24   of the deputy on the stairs. By this time, five (5) additional deputies made their way
25   up the steps toward Tommy. At least three (3) of the deputies sprayed Tommy's
26   face with O.C. as they rushed Tommy. Deputy M. Johnson immediately applied a
27   carotid hold from behind Tommy after Tommy turned away from the onslaught of
28   deputies rushing toward him. At least five (5) other deputies, in addition to

4

Johnson, "swarmed" Tommy simultaneously and drove Tommy's body down to the floor, face first, and into the corner of a concrete support post. Johnson maintained the carotid hold the entire time while he and the other deputies placed their weight upon Tommy and his limbs, deputies secured Tommy's limbs, held Tommy's head face down and affixed Tommy's arms and then his legs with mechanical restraint devices. One deputy pressed his hand into the back of Tommy's head. During this time, the deputies were joined by Sgt. Smith and an eighth deputy. The deputies applied a "spit sock" over Tommy's head.

As Tommy Tucker lay in the prone position with a spit sock, now wet with OC, over his head, the deputies had a discussion about where to place Tommy. After they discussed and decided to place him in his cell, they attempted to stand him up. Tommy's body was limp. Tommy's face was "blue." The spit sock was removed. In-house medical staff was called. The senior nurse noted that Tommy was laying on the ground in the prone position, face down, and that Tommy was cyanotic. Paramedics were immediately called. Tommy went into cardiac arrest. He was resuscitated at the scene, several times later en route and again at UCSD; but Tommy was later pronounced dead.

San Diego County Medical Examiner Dr. Glenn Wagner performed an autopsy of Tommy. Dr. Wagner concluded that Tommy's death was "anoxic encephalopathy (brain dead) due to prolonged hypoxia during a resuscitated (cardiac) arrest during police restraint and the ascribed manner of death as homicide." Dr. Wagner listed Tommy's risk factors for sudden collapse as his hyperactive state, epilepsy, asthma and obesity, and ruled that the nature of the custodial restraint "including pepper spray applications (plural), carotid restraint, and multiperson envelopment are all possible and probable triggering events for his subsequent cardiorespiratory arrest." Tommy Tucker was walking back to his cell when the Deputies stopped him; used force; and killed him. The deputies began an argument with the mentally unstable Tommy, then proceeded directly into

intermediate level of force with multiple applications of OC spray.[2] Tommy was a known asthmatic and suffered from a seizure disorder, both of which strongly contraindicate the use of OC.

      Tommy had thrown no punches or kicks. His back was turned toward the deputies as he attempted to return to his cell. No person other than Tommy received any physical harm in this incident. The carotid restraint caused hemorrhaging to Tommy's neck. Tommy was enveloped by as many as six deputies who took Tommy to the floor (while the carotid hold was still being applied) applying their body weight on his back. This force compromised Tommy's cardiopulmonary function and lead to his cardiac arrest. Tommy Tucker was killed over a cup of water. After Tommy was sent to the hospital, the deputies all met together with the shift commander, watched the video of the incident, and "discussed the situation" before writing their use of force reports. During this meeting, the deputies elected to make untrue statements that Tommy threw hot water on Deputy Nazerian, that he took a fighting stance, that he charged toward them, that there was a minimal use of carotid pressure, and that after Tommy was seen to be blue, he was placed on his side in the "recovery position" rather than being left in the prone position.

## CONTENTIONS OF LAW

      The liability of the defendants is predicated under the counts recited in the amended complaint, as follows:

      **FIRST CAUSE OF ACTION:** By Plaintiff VERNA CLARK and Decedent TOMMY CHRISTOPHER TUCKER and SABRINA SMITH for violation of 42 U.S.C. § 1983 against all defendants who, acting under color of law, deprived Tommy Christopher Tucker of his rights under the United States Constitution to be free from punishment without due process of law, to be free from cruel and unusual punishment and to be free from the use of excessive force by law enforcement who

---

      [2]O.C. protocol calls for its application no more than once in a 24 hour period.

restrained, choked and battered him unreasonably and with deliberate indifference to the safety and welfare of Tommy Christopher Tucker, including watching him be suffocated and die.  By these acts, the defendants violated Tommy Christopher Tucker's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the First, Fourth, Eighth and Fourteenth Amendments.  The defendant deputies used excessive and deadly force against Tommy Christopher Tucker when there was no cause for the same, with a purpose to cause harm that is unrelated to the legitimate use of force.  The deadly force was used to make Tommy Christopher Tucker suffer and to punish him for the false and contrived reason that Tommy Christopher Tucker tossed a cup of water on a deputy, which in actuality did not happen. The deprivation of these rights has destroyed the Constitutional rights of Tommy Christopher Tucker and Verna Clark to the familial love, society and companionship of mother and son protected by the substantive due process clause of the Fourteenth Amendment.

The deprivation of the constitutional rights pled in this cause of action also resulted from a custom, policy and practice in the San Diego Sheriff's Department of using deadly/lethal carotid artery restraints that included choking, the use of the spit sock and restraints in situations controllable by lesser means and by means that are suitable to deal with someone who was overweight and suffering from asthma and other medical problems and Defendants' use of this deadly force constituted deliberate indifference to the Constitutional rights of Tommy Christopher Tucker which was the moving force behind the Constitutional violations in this cause of action.

**SECOND CAUSE OF ACTION**: By Plaintiff VERNA CLARK and Decedent TOMMY CHRISTOPHER TUCKER and SABRINA SMITH for violation of 42 U.S.C. §§ 1983 and 1988 against all defendants who, acting under color of law, committed wrongful acts as set forth in other causes of action which

proximately caused the death of TOMMY CHRISTOPHER TUCKER. Specifically, the defendants violated Tommy Christopher Tucker's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. The officers used excessive force as alleged above against Tommy Christopher Tucker, with a purpose to cause harm that is unrelated to the legitimate use of force. The force was used to make Tommy Christopher Tucker suffer and to punish him as noted, above. The force used was unreasonable and performed with a deliberate indifference to the safety and welfare of Tommy Christopher Tucker. The deprivation of the rights alleged above has destroyed the Constitutional rights of Verna Clark and Tommy Christopher Tucker to the familial love, society and companionship as mother and son protected by the substantive due process clause of the Fourteenth Amendment. The deprivation of the constitutional rights pled in this cause of action also resulted from a custom, policy and practice in the San Diego Sheriff's Department of using unreasonable and excessive restraint techniques, including the use of a carotid artery hold, choking, applying excessive weight and force on the decedent while he was face down on the ground and use of the spit sock as being deliberately indifferent to the Constitutional rights of Tucker which was the moving force behind the Constitutional violations in this cause of action.

**THIRD CAUSE OF ACTION:** By Plaintiff SABRINA SMITH as Successor in Interest to the Estate of Tommy Christopher Tucker and VERNA CLARK for violation of 42 U.S.C. § 1983 against all defendants who, acting under color of law, deprived Tommy Christopher Tucker of his rights under the United States Constitution as alleged in the previous causes of action. The conduct alleged herein violated Tommy Christopher Tucker's rights alleged above thereby resulting in a deprivation of plaintiffs' rights alleged above which has legally, proximately, foreseeably and actually caused plaintiffs to suffer emotional distress, pain and

suffering, and further damages according to proof at the time of trial. The conduct of the defendants as alleged herein also amounted to willful and wanton conduct worthy of the award of exemplary or punitive damages against these defendants in an amount according to proof at the time of trial in order to deter the defendants from engaging in similar conduct and to make an example by way of monetary punishment. Plaintiffs are also entitled to attorney fees and costs of suit herein pursuant to statute.

**FOURTH CAUSE OF ACTION:** By Plaintiff SABRINA SMITH as Successor in Interest to the Estate of Tommy Christopher Tucker and VERNA CLARK for violation of 42 U.S.C. § 1983 against all defendants who, acting under color of law, deprived Tommy Christopher Tucker of his rights under the United States Constitution to adequate medical care, including the right to receive standard, recognized medical and psychological care and medications and the right to be housed in an appropriate facility given his known and documented serious and life threatening medical and mental conditions. Decedent, was known to suffer from and was documented to suffer serious medical conditions such as uncontrolled seizure disorder, chronic asthma, obesity, blindness and loss of hearing, and even more serious and chronic and longstanding mental issues that affected not only the Decedent but also affected his interactions with others in the jail including the Defendants. This denial of the right to adequate medical care was not simply mere negligence or gross negligence, but it was so egregious as to constitute deliberate indifference to the serious medical needs and the safety and welfare of Tommy Christopher Tucker which resulted in serious bodily injury to Tommy Christopher Tucker and indeed resulted in his death. By these acts, the defendants violated Tommy Christopher Tucker's constitutional rights to be free from excessive force, punishment without due process of law, cruel and unusual punishment, and all rights guaranteed under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. The denial of adequate medical care as alleged above against

Tommy Christopher Tucker, was intended and did cause harm that is unrelated to the legitimate use of force. This denial of adequate medical care was done with reckless indifference for Decedent's well being during Decedent's incarceration while documented medical reasons existed for different medical care. The extent to which Tommy Christopher Tucker's medical and mental conditions were known to exist by Defendants and the gross lack of treatment for the same or transfer to a facility better suited for the same is so blatant and clear to even a lay person that the denial was a deliberate indifference to the safety and welfare of Tommy Christopher Tucker.

The deprivation of the constitutional rights pled in this cause of action also resulted from a custom, policy and practice in the San Diego Sheriff's Department of denying adequate medical care to detainees in San Diego County jails and was the moving force behind the Constitutional violations in this cause of action.

Plaintiffs demand the following relief jointly and severally against all defendants:

(a) a declaration that defendants violated the federal civil rights of plaintiffs;

(b) compensatory damages for physical, emotional, and economic injuries suffered by plaintiffs by reason of defendants' unlawful and unjustified conduct, in an amount just and reasonable and in conformity with the evidence at trial;

(c) punitive damages against the individual defendants to the extent allowable by law;

(d) attorneys fees;

(e) the costs and disbursements of this action; and

(f) such other and further relief as appears just and proper.

# LIABILITY

Defendants' liability is founded, primarily, under 42 U.S.C. § 1983, which provides, in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privilege, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Defendant's use of excessive force on decedent is actionable under § 1983. *Monroe v. Pape* (1961) 365 U.S. 167. One of the most important purposes of 42 U.S.C. § 1983 is to deter future abuses of power by persons acting under color of law. *City of Newport v. Fact Concerts* 453 U.S. 247 (1981). Negligent deprivations are actionable under § 1983. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Hirst v. Gertzen* 676 F.2d 1252 (9th Cir., 1982).

Under Section 1983, individual liability lies where (1) the conduct complained of was committed by a person acting under color of state law and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution of the United States. Here, there is no dispute that Defendant officers' conduct was under color of state law.

The primary issue for jury determination is whether the use of force against Tommy Christopher Tucker was unreasonable and excessive. Assaults and batteries by persons acting under color of law are actionable in Section 1983 suits. The constitutional right involved is the right "to be secure in one's person." *Meredith v. Arizona* 523 F.2d 481 (9th Cir. 1975); *Gregory v. Thompson* 500 F.2d 59 (9th Cir. 1974); *Allison v. Wilson* 434 F.2d 646 (9th Cir. 1970).

# ABANDONED ISSUES

None.

**PLAINTIFFS' EXHIBITS**

Exhibit 1. County of San Diego Medical Examiner's Investigative Report, Autopsy Report and Toxicology Report related to the death of Tommy Tucker including all pictures of Tommy Tucker taken during said autopsy.

Exhibit 2. Medical records of Tommy Tucker provided by the County of San Diego Medical Examiner's office received pursuant to request of Plaintiffs.

Exhibit 3. Medical records of Tommy Tucker provided by the County of San Diego Sheriff's Office on CD received pursuant to request of Plaintiffs.

Exhibit 4. Medication Administration Records (MAR) of Tommy Tucker from 1/13/09 to 2/22/09 provided by County of San Diego Sheriff's Office on CD received pursuant to request of Plaintiffs.

Exhibit 5. Letter dated November 17, 2009 from San Diego County District Attorney Bonnie Dumanis to Sheriff William Gore re District Attorney's investigation of the death of Tommy Tucker received pursuant to request of Plaintiffs.

Exhibit 6. California State Court records pertaining to Tommy Tucker from the Superior Court of California, County of San Diego, East County Division, case number C285926DV received pursuant to request of Plaintiffs.

Exhibit 7. California State Court records pertaining to Tommy Tucker from the Superior Court of California, County of San Diego, East County Division, case number C287270DV received pursuant to request of Plaintiffs.

Exhibit 8. The In Custody Death investigation report relative to the death of Tommy Tucker, including all portions/subparts thereof that was produced by Defendants herein.

Exhibit 9. The still and moving photographs taken of Module 6D that have been produced by Defendants or their agents or employees including Dr. Wagner, including both the original recordings and the "cleaned" version prepared by Plaintiff's counsel and provided to Defendant's counsel.

Exhibit 10. The still and moving photographs taken of Module 6D taken by Plaintiff's counsel while accompanied by agents or employees of Defendants.

Exhibit 11. Audio recordings of interviews of deputies and of prisoners taken as a part of the ICD investigation and supplied to Plaintiff's counsel.

Exhibit 12. Training materials used by the San Diego Sheriff's Department to train deputies that were referenced in the depositions taken of deputies in

this case, in Roger Clark's Rule 26 disclosure or in the deposition of Roger Clark.

Exhibit 13. Policies and Procedures of the San Diego Sheriff's Department guiding the conduct of its deputies that were referenced in the depositions taken of deputies in this case, in Roger Clark's Rule 26 disclosure or in the deposition of Roger Clark.

Exhibit 14. The compilation of still photographs derived from surveillance cameras in Module 6D that were used during the taking of Defendants' depositions.

Exhibit 15. The "cup" discovered in Module 6D during the ICD investigation believed to be that cup belonging to Tommy Tucker.

Exhibit 16. The exemplar "spit sock" provided by Defendants' counsel that was used as an exhibit during Defendants' depositions.

Exhibit 17. Exemplars of all hardware of the type used to restrain Tommy Tucker on the occasion complained of in this lawsuit.

Exhibit 18. An exemplar of the OC spray device(s) activated by deputies toward Tommy Tucker.

Exhibit 19. The video produced by Defendants' counsel of a previous incident wherein Tommy Tucker failed to timely lock down as directed.

Exhibit 20. The jail records made relative to Tommy Tucker by deputies or staff during any portion of the incarceration made the basis of this lawsuit including records of disciplinary action taken against Tommy Tucker for preciously failing to timely lock down as directed.

Exhibit 21. Booking jacket/File and medical file for Tommy Tucker, as identified in Defendants' Initial Disclosure No. 7.

Exhibit 22. San Diego County Sheriff's arrest contact reports regarding Tommy Tucker numbers 08074377, 09010143, 09012192, 09019005, as identified in Defendants' Initial Disclosure No.8

Exhibit 23. JIMS (Jail Information Management System) printouts and information, as identified in Defendants' Initial Disclosure No. 9.

Exhibit 24. The video used on the recruitment web page for the San Diego Sheriff's Department at URL http://www.joinsdsheriff.net/detentions.wmv

Exhibit 25. Written answers to discovery propounded to any Defendant

Exhibit 26. Letter written by inmate Mark Lim

Exhibit 27. Any document not named previously herein that was made an exhibit to any deposition taken in this case.

Exhibit 28. Any document that is listed or identified by any Defendant.

13

**WITNESSES**

LIVE:

Plaintiff Sabrina Smith
c/o CARTEE & MORRIS, LLC
2325 Henry Street
Guntersville, Alabama 35976
TEL: (256) 582-9500

Plaintiff Verna Clark
c/o CARTEE & MORRIS, LLC
2325 Henry Street
Guntersville, Alabama 35976
TEL: (256) 582-9500

Defendant John Ferris
San Diego County Sheriff's Office
1173 Front St
San Diego, CA 92101
(619) 610-1647

Defendant Aaron Hoxie
San Diego County Sheriff's Office
1173 Front St
San Diego, CA 92101
(619) 610-1647

Defendant Michael Johnson
San Diego County Sheriff's Office
1173 Front St
San Diego, CA 92101
(619) 610-1647

Defendant Nikholas Johnson
San Diego County Sheriff's Office
1173 Front St
San Diego, CA 92101
(619) 610-1647

Defendant Benjamin Nazerian
San Diego County Sheriff's Office
1173 Front St
San Diego, CA 92101
(619) 610-1647

Defendant Edward Wilt
San Diego County Sheriff's Office
1173 Front St
San Diego, CA 92101
(619) 610-1647

Lt. Michael Nichols
San Diego County Sheriff's Office
1173 Front St

1  San Diego, CA 92101
   (619) 610-1647

2

3  Sgt. Rodrick Smith
   San Diego County Sheriff's Office
   1173 Front St
4  San Diego, CA 92101
   (619) 610-1647

5

6  Corporal Harvey Seeley
   San Diego County Sheriff's Office
   1173 Front St
7  San Diego, CA 92101
   (619) 610-1647

8

9  Deputy Keith Price
   San Diego County Sheriff's Office
   1173 Front St
10 San Diego, CA 92101
   (619) 610-1647

11

12 Deputy Luis Gomez
   San Diego County Sheriff's Office
   1173 Front St
13 San Diego, CA 92101
   (619) 610-1647

14

15 Nurse Ronald Marquez
   San Diego County Sheriff's Office
   1173 Front St
16 San Diego, CA 92101
   (619) 610-1647

17

18 Nurse Cloribel Desilva
   San Diego County Sheriff's Office
   1173 Front St
19 San Diego, CA 92101
   (619) 610-1647

20

21 Nurse Erlinda Taylor
   San Diego County Sheriff's Office
   1173 Front St
22 San Diego, CA 92101
   (619) 610-1647

23

24 Glenn N. Wagner, D.O.
   Chief Medical Examiner
25 San Diego Medical Examiner's Office
   5555 Overland Ave., Suite 1411
26 San Diego, CA 92123-1245
   (858) 694-2895.

27

28 Detective Martinez
   San Diego County Sheriff's Office

1173 Front St
San Diego, CA 92101
(619) 610-1647

San Diego Sheriff Deputy Sgt. R. Frank
San Diego County Sheriff's Office
1173 Front St
San Diego, CA 92101
(619) 610-1647

USBP Agent J. Bell
address unknown

CSI H. Kirin
address unknown

Andrea Dominguez
address unknown

Alicia Guerrero
12530 Royal Rd., Apt. 36,
El Cajon, CA 92021

Mark Lim
California Department of Corrections
Mule Creek State Prison (MCSP)
P.O. Box 409020
Ione, CA 95640

Any witness listed by any Defendant in this case

Rebuttal witnesses not known at this time


BY DEPOSITION:

None

EXPERT WITNESSES

Glenn N. Wagner, D.O.,
Chief Medical Examiner
San Diego County Medical Examiner's Office
555 Overland Ave., Suite 1411
San Diego, CA 92123-1245
(858) 694-2895

Roger Clark
10207 Molino Road
Santee CA 92071
(208) 351-2458

**JURY TRIAL**

Timely demand for jury trial has been made by both the plaintiffs and the defendants.

**ATTORNEYS' FEES**

The Court should reserve jurisdiction for the purpose of determining after trial the amount of attorneys' fees to be granted to the prevailing party pursuant to 42 U.S.C. § 1988.

Date:   September 5, 2013                    Respectfully submitted,

                                             *S/ Julia Yoo*
                                             JULIA YOO
                                             Attorney for Plaintiff